**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES VAVRA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. l:21-cv-06847 |
| | ) | |
| v. | ) | Honorable Jorge L. Alonso |
| | ) | |
| HONEYWELL INTERNATIONAL INC., a | ) | Magistrate Judge Heather K. McShain |
| Delaware corporation, d/b/a HONEYWELL | ) | |
| INTELLIGRATED, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S ANSWER AND DEFENSES TO
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant HONEYWELL INTERNATIONAL INC. ("Defendant"), improperly identified as d/b/a Honeywell Intelligrated, by and through its undersigned attorneys, respectfully submits its Answer and Defenses to the First Amended Complaint ("First Amended Complaint") of Plaintiff CHARLES VAVRA ("Plaintiff"), as follows:

**INTRODUCTION**

1.      For 13 years, Chuck Vavra did exemplary work as an estimator and engineer for Honeywell. Honeywell promoted him multiple times, and he received excellent reviews of his work. Vavra's final position at Honeywell was as Principal Engineer, in which he estimated large projects for Honeywell's key clients. He never faced any disciplinary action during his time working there—that is, until he objected to discriminatory and racist employee training imposed on him in 2020 and 2021.

**ANSWER:**

Defendant denies that discriminatory and racist employee training was imposed on Plaintiff and Defendant denies the remaining allegations contained in Paragraph 1.

2.      In November of 2020, Honeywell announced an "Implicit Bias Training" initiative, in which all employees would be required to undergo training on the theory of implicit racial bias. The initial requirement came from Honeywell's Diversity, Equity and Inclusion office and created a deadline for completion of the online training of February 25, 2021.

**ANSWER:**

Defendant admits that in or around November 2020, Honeywell announced Unconscious Bias Awareness training for all employees to be completed online by February 25, 2021. Defendant denies the remaining allegations contained in Paragraph 2.

3.      Vavra strongly objected to the Implicit Bias Training and the increasingly hostile racial and intellectual environment emanating from Honeywell's Management. Under Honeywell's policies, Vavra should have been able to voice his objections to the training because of its discriminatory and racist nature.

**ANSWER:**

Defendant admits Plaintiff objected to completing the Unconscious Bias Awareness training. Defendant admits that it has policies that provide employee's methods to report concerns about harassment and or discrimination. Defendant denies that Plaintiff was subjected to a hostile racial and intellectual environment. Defendant denies the Unconscious Bias Awareness training was discriminatory and/or racist. Defendant denies the remaining allegations contained in Paragraph 3.

4.      Instead of being protected for voicing his objection and concerns about the training, Vavra was fired.

**ANSWER:**

Defendant admits Plaintiff was terminated. Defendant denies the remaining allegations contained in Paragraph 4.

5.      Vavra brings this action for discrimination, reprisal and wrongful discharge based on Honeywell's imposition of a discriminatory and racist employee training program, in contravention of federal and state law as outlined below, and upon Vavra's opposition to said training program.

**ANSWER:**

Defendant denies it imposed a discriminatory and/or racist employee training program. Defendant admits that Plaintiff brings this action alleging race discrimination and retaliation in violation of federal and state law. Defendant denies the remaining allegations contained in Paragraph 5.

## PARTIES

6.      Vavra is a resident of the State of Illinois within the Northern District of Illinois, and he currently resides in Bolingbrook, Illinois. Vavra is a former employee of Honeywell, where he worked most recently as a Principal Application Engineer.

**ANSWER:**

Defendant admits that Plaintiff is a former employee. Defendant lacks knowledge or information sufficient to either admit or deny the allegations with respect to Plaintiff's residency. Defendant denies the remaining allegations in Paragraph 6.

7.      Honeywell is a Delaware corporation, and Honeywell Intelligrated in particular, has its principal place of business in Mason, Ohio. Honeywell does business in the State of Illinois. Honeywell is engaged in the business of material handling automation and related software engineering.

3

**ANSWER:**

Defendant admits it is a Delaware corporation, which does business in the State of Illinois and that Honeywell Intelligrated has its principal place of business in Mason, Ohio. Defendant admits that Honeywell Safety and Productivity Solutions provides products, software and connected solutions that improve productivity, workplace safety and asset performance. Defendant denies the remaining allegations contained in Paragraph 7.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action raises claims involving United States statutes. This Court further has supplementary jurisdiction over Plaintiff's state common law claims pursuant to 28 U.S.C. § 1367.

**ANSWER:**

Defendant admits only that the statutes cited in Paragraph 8 confer jurisdiction. Defendant denies it engaged in any unlawful employment practices or any unlawful conduct.

9.      This Court has personal jurisdiction over Honeywell because it has a physical presence and does business in the State of Illinois, and it employed Vavra, an Illinois citizen.

**ANSWER:**

Admitted.

10.      Venue is proper in the Northern District of Illinois under 42 U.S.C. § 2000e- 5(f)(3) and 28 U.S.C. § 1391(e)(1) because the actions Defendant Honeywell committed took place in the Northern District of Illinois and because Vavra would have worked in the Northern District of Illinois but for the alleged unlawful employment practice.

**ANSWER:**

Defendant admits only that the statutes cited in Paragraph 10 confer venue and that venue is proper in the Northern District of Illinois, Eastern Division. Defendant denies it engaged in any

4

unlawful employment practices or any unlawful conduct, and denies all remaining allegations contained in Paragraph 10.

## **BACKGROUND**

11.     Vavra was hired by Intelligrated Systems, Inc. ["Intelligrated"] in its Woodridge, Illinois office in July of 2008. When Vavra was first hired, he worked as a Project Manager, where he served as a liaison with customers during the equipment manufacturing, design, and implementation of projects. In 2013, Intelligrated promoted Vavra to Estimating Manager, where he supervised engineers in the design and cost estimation of distribution systems for customers and provided sales support for the Sales Department. In or about July of 2016, Intelligrated was acquired by Honeywell, and began doing business as Honeywell Intelligrated, a division of Honeywell's Safety and Productivity Solutions ("SPS") division. Vavra's employment did not change at that time, but he technically became an employee of Honeywell International Inc. In February of 2021 Vavra was again promoted to Principal Engineer, estimating large projects for Honeywell's key clients, with a commensurate raise in compensation. During his employment with both Intelligrated and Honeywell, Vavra's performance was exemplary, and he received excellent performance reviews. Vavra was never subject to any disciplinary or other negative employment actions during his entire employment from 2008 through February of 2021.

**ANSWER:**

Defendant admits that Plaintiff has a historical hire date of July 28, 2008 with Intelligrated. Defendant lacks knowledge or information sufficient to either admit or deny the allegations with respect to Plaintiff's positions or job duties with Intelligrated.  Defendant admits that in or about July 2016, Defendant acquired Intelligrated and it became part of Defendant's SPS division. Defendant admits that Plaintiff became an employee of Defendant due to the acquisition. Defendant denies the remaining allegations contained in Paragraph 11.

12.     In 2020, following the killing of George Floyd in Minneapolis, Minnesota, Honeywell began a series of communications with its employees laying out the Company's theory of race and racial relations. In particular, on September 24, 2020 the CEO of the SPS Division, John Waldron, sent a company-wide email to all employees stating, among other things, that:

> Racial bias is real. Don't kid yourself. Each of us has unconscious bias within us. When these biases compound, they can evolve into institutional biases. Breaking out of this cycle is critically important for moving society forward. Breaking this cycle requires courage - the courage to discuss, the courage to admit our bias and to encourage and promote our differences, the courage to change.
>
> Words alone aren't sufficient. We must take tangible actions to make a difference. We have, and we will continue to do so. In SPS, we are committed to doubling our efforts on the agenda we have set forth previously which includes engaging our Employee Resource Groups (ERG) with another round of listening sessions, upping our game when hiring ensuring 100% of the time that the interview panel and candidates are diverse, and you can expect to hear of other actions we will be taking.

**ANSWER:**

Defendant admits that on September 24, 20202, the CEO of the SPS Division, John Waldron, sent a company-wide email to all employees with the subject "Continue to Fight for Social Justice." Defendant states that the allegations of Paragraph 12 does not fully set forth the content of that email and states that the document speaks for itself. Defendant denies all remaining allegations contained in Paragraph 12.

13.     In November of 2020, Honeywell announced an "Implicit Bias Training" initiative, in which all employees would be required to undergo training on the theory of implicit racial bias. The initial requirement came from Honeywell's Diversity, Equity and Inclusion office and created a deadline for completion of the online training of February 25, 2021. Vavra objected to this training based on what he felt were discriminatory, racist and otherwise incorrect and inappropriate

components to the training. Vavra was told by numerous employees that they felt similarly about the training, but were intimidated by the Company's statements and felt they could not speak up about their feelings.

**ANSWER:**

Defendant admits that in or around November 2020, Honeywell announced Unconscious Bias Awareness Training to be completed online by February 25, 2021. Defendant admits that after it contacted Plaintiff on multiple occasion about needing to complete the required training, Plaintiff sent an email to HR Director, Katie Becker, stating he would not take the training because he felt "it's a joke" and a "ridiculous charade." Plaintiff stated he felt the training was "offensive" and "discrimination" towards "white people." Defendant lacks knowledge or information sufficient to either admit or deny the allegations with respect to whether Plaintiff was told by numerous employees that they felt similarly about the training, but were intimidated by the Company's statements and felt they could not speak up about their feelings. Defendant denies all remaining allegations contained in Paragraph 13.

14.     When Vavra received the email from the Diversity, Equity and Inclusion office mandating Implicit Bias Training, he was concerned, both because of what he knew about such training, and other communications from the Company, including the communication from John Waldron listed above. In particular, Vavra was aware of the questionable scientific validity of the Implicit Association Test ("IAT"), the basis for much Implicit Bias Theory.

**ANSWER:**

Defendant lacks knowledge or information sufficient to either admit or deny the allegations contained in Paragraph 14.

15.     Based on his concerns regarding Implicit Bias Theory as well as the increasingly hostile racial and intellectual environment emanating from Honeywell's Management, Vavra was hesitant to take the proposed training. Therefore, he declined to take the online, self-directed training by the February 25, 2021 deadline. Although Vavra was concerned about this course of action, he felt he would be protected for voicing his opinion under the terms of the Company's anti-retaliation policy, which read as follows:

> **HONEYWELL     WILL     NOT     TOLERATE     RETALIATION**
>
> It is important that you feel comfortable raising your questions and concerns. Honeywell will not tolerate any form of retaliation against you for making a good faith report of actual or potential misconduct. Making a report in "good faith" means your report is honest, sincere, and complete to the best of your knowledge.
>
> If you feel an act of retaliation has occurred, you should report your concerns via one of the methods outlined in "Asking for Advice and Voicing Concerns."

**ANSWER:**

Defendant denies an "increasingly hostile racial and intellectual environment emanating from Honeywell's Management." Defendant admits that Plaintiff declined to take the Unconscious Bias Awareness training. Defendant denies that Plaintiff has fully set forth its non-retaliation policy and states that said policy speaks for itself. Defendant lacks knowledge or information sufficient to either admit or deny the remaining allegations of Paragraph 15 with respect to Plaintiff's alleged concerns and feelings.

16.     In response to Vavra's failing to take the training, he began to receive a series of increasingly urgent communications from Company Management reminding, encouraging, and finally cajoling him into taking the training. In one of such emails, a Human Resources Representative asked what "barriers" Vavra may have to taking the training. In response to this

apparently rhetorical question, on March 8, 2021, Vavra wrote a detailed explanation of his concerns regarding the training, in which he explained his legal objections to the proposed training, as well as his view of the workplace, social, political and media environment giving rise to the perceived need for the training. Vavra included the entire September 2020 communication from John Waldron, and provided his thoughts on that communication.

**ANSWER:**

Defendant admits Plaintiff received several reminders to complete the required training. Defendant admits that in response to an email from Ms. Becker notifying Plaintiff that he needed to complete the training and noting he should let her know if he had any issues completing the training, Plaintiff responded with a lengthy email on March 8, 2021. Defendant admits that Plaintiff's response included the entirety of Mr. Waldron's September 2020 email and his thoughts on Mr. Waldron's communication. Defendant admits that Plaintiff stated his beliefs, including but not limited to that: unconscious bias training "is the decades old joke of a solution to a problem that doesn't even exist to anywhere near the extent they make it out to."; that Mr. Waldron and "the mainstream media" were "exploiting the deaths of black people to incite racial tensions"; that the deaths of Breonna Taylor and George Floyd should not be brought into the workplace; that "systemic racism" is an invention of the media and "a lie"; and that Mr. Waldron's email was "race-baiting" and discrimination towards "white people." Defendant denies all remaining allegations contained in Paragraph 16.

17.     The March 8, 2021 email from Vavra to Human Resources Representative Katie Becker (which he copied to his supervisors), laid out Vavra's legal objections to the training, including in part:

> As the CEO of a division of a global company, I'm sure there is no way he would ever suggest that all of his black colleagues should

9

somehow feel like victims in the Breonna Taylor case just because she was black. I'm sure he would never suggest that his colleagues of other races should have no feelings about the Breonna Taylor incident because they're NOT black, right? *Because that would be kind of ...oh, I don't know ... racist and discriminatory?*

(Emphasis added.)

I found the courage to admit to myself that the CEO of SPS was a race-baiter. It appeared he was gaslighting his non-white colleagues into believing he is some sort of angelic empath that has taken it upon himself to be the spokesperson and apologist for all of his white colleague's and their evil ways by implying that we are all somehow tied to the killings of Breonna Taylor and George Floyd. He is also implying that all of our non-white colleagues should be dumb enough to believe it.

***

Perhaps we would be better off focusing on why racism still exists today.

***

So let me make this perfectly clear, John Waldron nor anybody else gets to tell me I have unconscious bias. Is Mr. Waldron a psychiatrist or a psychologist to make that assessment? ... He made a 'conscious' decision to race-bait all of his colleagues by suggesting the Breonna Taylor case was racially motivated.

***

The most disturbing ... and somewhat laughable observation I made in Mr. Waldron's email was the **exclusion** of an entire race of his colleagues that his heart went out to. And I quote, 'My hands and heart are open to each of our Black, Hispanic, Asian and LGBTQ colleagues'. As far as I know, Breonna Taylor and George Floyd were both black. They weren't Hispanic and they weren't Asian. I can't speak for their sexual preferences because the media didn't sensationalize that aspect of them ... only that they were black.

(Emphasis in original.)

**ANSWER:**

Defendant denies that Plaintiff's March 8, 2021 email contained legal objections to the training. Defendant admits that Plaintiff's email, in part, contains the statements alleged in

10

Paragraph 17 but denies that Paragraph 17 fully sets forth Plaintiff's email. Defendant states that the email speaks for itself. Defendant denies all remaining allegations contained in Paragraph 17.

18.     Vavra received an email confirmation of the receipt of his email complaint, but no other substantive communication. He continued, however, to receive email requests to complete the implicit bias training. On Friday, March 19, 2021, Vavra was asked to attend a one-on-one meeting with Chris Maines, Vice-President of Engineering. During this meeting, Mr. Maines asked Vavra to reconsider and to take the training, which he characterized as "one more box to check" and "not a big deal." Vavra responded that it *was* a big deal to him, and that he believed it raised substantial legal and moral issues.

**ANSWER:**

Defendant admits Plaintiff continued to receive emails to complete the required Unconscious Bias Awareness training. Defendant admits that on or about March 19, 2021, Mr. Maines, IGS Engineering Leader, requested Plaintiff meet with him to discuss the refusal to take the training. Defendant denies the remaining allegations contained in Paragraph 18.

19.     Following the conversation with Mr. Maines, Vavra decided to take the IAT by logging on to the harvard.edu website, in order ensure that he was fully informed about the background of the topic and his own stated views of the test. Vavra's results from that test indicated that he had a bias *in favor of* African Americans and *against* White Americans. He then took the same test three days later and was told that he *did* harbor implicit biases *against* African Americans. This confirmed to him what he had previously learned concerning the IAT, in that it is generally considered to be unreliable and incapable of validation.

**ANSWER:**

Defendant lacks knowledge or information sufficient to either admit or deny the allegations contained in Paragraph 19. Defendant denies that Plaintiff ever completed the Unconscious Bias Awareness training required by Defendant.

20. On March 23, 2021, Vavra wrote to Mr. Maines again explaining his position on Implicit Bias Training, and included the results of his two IAT examinations. He specifically said, among other things:

> Can John Waldron or the Inclusion and Diversity group prove that everyone has "unconscious" bias? I highly doubt it. They call it a vague term like "unconscious" bias because they know they can't prove it and probably because they know that it's absolutely ridiculous. *I found John Waldron's 9/24 incredibly offensive, discriminatory and racist* and I don't want to be "trained" to be someone like that. His email was meant to be offensive as far as I'm concerned. ***I think a more valuable training than "Unconscious Bias" would be training on Title VII of the Civil Rights Act.***
>
> ***
> John Waldron suggested having the 'courage to discuss' [implicit racism] in his email. I propose we do it.

(Emphasis added.)

Vavra went on to explain that he did not know the legal definitions involved, but felt nevertheless that the law was being violated:

> I referenced John Waldron's discriminatory remarks in his 9/24 email in my last letter to HR. I am referencing it again today. I don't know what would be considered an "official" discrimination claim, but both should be considered as such.

Vavra never heard back from Mr. Maines.

**ANSWER:**

Defendant admits that Plaintiff sent an email to Mr. Maines on March 23, 2021, which, in part, included Plaintiff's statements alleged in Paragraph 20. Defendant admits that in the email dated March 23, 2021, Plaintiff claimed to have taken an IAT test twice with different results and that he included a screen shot of his purported test results. Defendant denies that Paragraph 20 sets forth the entirety of Plaintiff's email and Defendant states that the email speaks for itself. Defendant admits that Mr. Maines did not respond to Plaintiff. Defendant denies the remaining allegations contained in Paragraph 20.

21.     In his position as Principal Engineer, Vavra would meet with supervisor Jeff Cortez on a weekly basis for a "check in" meeting. On April 7, Mr. Cortez scheduled such a meeting, although it was not on its usual day. The meeting took place via Microsoft Teams, and a Human Resources representative Katie Becker also took part. Mr. Cortez raised the issue of implicit bias training, and Vavra explained the reasons he did not want to take the training. Mr. Cortez stated that he understood, but that if Mr. Vavra didn't take the training "that would be it." Vavra again stated that he could not, in good conscience, take the training. Ms. Becker explained that he would therefore be terminated.

**ANSWER:**

Defendant denies that Plaintiff held the position of Principal Engineer. Defendant admits that Plaintiff would regularly meet with his supervisor, Jeff Cortez. Defendant admits that on or about April 7, 2021, a Teams meeting was held with Mr. Cortez, Ms. Becker and Plaintiff in which Plaintiff's refusal to take the required training was discussed and Plaintiff was informed that his employment was terminated. Defendant denies the remaining allegations contained in Paragraph 21.

22.　　Honeywell terminated Vavra's employment.

**ANSWER:**

Admitted.

23.　　Following his termination, Vavra wrote to Ms. Becker asking if he would be given a written reason for his termination. Consistent with the Company's Anti-Retaliation Policy, he further stated "*I was hoping that a discrimination claim wouldn't have ended with getting terminated, but it's a different country we're living in these days.* I wish you all the best and thanks for everything." (emphasis added). Ms. Becker wrote back stating that the Company would *not* provide any further information regarding the termination. To this day, no such explanation has been given.

**ANSWER:**

Defendant lacks knowledge or information sufficient to either admit or deny the allegations in Paragraph 23.

24.　　Also following his termination, Vavra filed a charge with the Equal Employment and Opportunity Commission ("EEOC"), which charge is attached as **Exhibit 1.**

**ANSWER:**

Admitted.

25.　　Vavra then requested a Notice of Right to Sue, and he received a Notice of Right to Sue on October 19, 2021, which notice is attached as **Exhibit 2.**

**ANSWER:**

Defendant admits Plaintiff requested a Notice of Right to Sue and that the EEOC issued a "Notice of Right to Sue (Issued on Request)" on October 19, 2021, which is attached as Exhibit 2.

Defendant lacks knowledge or information sufficient to either admit or deny the remaining allegations in Paragraph 25.

26. Vavra has exhausted all administrative requirements prior to bringing this lawsuit.

**ANSWER:**

Denied.

### FIRST CAUSE OF ACTION
### Racial Discrimination and Retaliation under the
### Illinois Human Rights Act

27. Vavra restates and realleges the preceding paragraphs as if fully set forth here.

**ANSWER:**

Defendant restates and incorporates by reference its answers to paragraphs 1 through 26, inclusive, as if fully set forth herein.

28. Defendant Honeywell is an "employer" within the meaning of the Illinois Human Rights Act, 775 ILST [sic] § 5/2-101(B).

**ANSWER:**

The allegations contained in Paragraph 28 assert a legal conclusion to which no response is required.

29. At all times relevant, Vavra was an "employee" of Honeywell within the meaning of the Illinois Human Rights Act, 775 ILST [sic] § 5/2-101(A)(l).

**ANSWER:**

The allegations contained in Paragraph 29 assert a legal conclusion to which no response is required.

30. The Illinois Human Rights Act makes it illegal to retaliate or otherwise engage in adverse action against an employee for opposing a practice made illegal by the Act. 775 ILST [sic] § 5/6-101(A).

**ANSWER:**

The allegations contained in Paragraph 30 assert a legal conclusion to which no response is required.

31.    When Vavra stated his opposition to what he believed to be racist and discriminatory statements and actions being taken by the Company, he was disciplined and then terminated by Honeywell. Honeywell was explicit in its decision to terminate Vavra *specifically because he opposed implicit bias training based on his conclusion that it was inherently racist.* Honeywell's termination of Vavra was in retaliation for the substance of his statements concerning racist and racially-provocative statements being made by Honeywell, its executives and managers, and its employees.

**ANSWER:**

Defendant denies the allegations contained in Paragraph 31.

32.    Because of Honeywell's illegal conduct, Vavra has suffered economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees.

**ANSWER:**

Defendant denies it engaged in any illegal conduct or any unlawful employment practices. Defendant denies the remaining allegations contained in Paragraph 32.

**SECOND CAUSE OF ACTION**
**Racial Discrimination and Retaliation under the Civil Rights Act of 1964**

33.    Vavra restates and realleges the preceding paragraphs as if fully set forth here.

**ANSWER:**

Defendant restates and incorporates by reference its answers to paragraphs 1 through 32, inclusive, as if fully set forth herein.

34.     At all times relevant, Honeywell employed at least fifteen employees, and thus was an "employer" for purposes of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

**ANSWER:**

The allegations contained in Paragraph 34 assert a legal conclusion to which no response is required.

35.     At all times relevant, Vavra was an "employee" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(f).

**ANSWER:**

The allegations contained in Paragraph 35 assert a legal conclusion to which no response is required.

36.     42 U.S.C. § 2000e-3(a) makes it illegal to retaliate against or otherwise discriminate against an employee for opposing any practice made unlawful by Title VII of the Civil Rights Act of 1964.

**ANSWER:**

The allegations contained in Paragraph 36 assert a legal conclusion to which no response is required.

37.     Honeywell's actions in disciplining and ultimately discharging Vavra because of his opposition to the opinions being expressed on racial issues at Honeywell constitutes retaliation, reprisal and discrimination.

**ANSWER:**

Honeywell denies that it discharged Plaintiff for the reasons alleged in Paragraph 37, denies that Plaintiff was subjected to retaliation, reprisal and/or discrimination and denies the remaining allegations contained in Paragraph 37.

17

38. Because of Honeywell's illegal conduct, Vavra has suffered economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees.

**ANSWER:**

Defendant denies it engaged in any illegal conduct or any unlawful employment practices. Defendant denies the remaining allegations contained in Paragraph 38.

**THIRD CAUSE OF ACTION**
**Wrongful Termination**

39. Vavra restates and realleges the preceding paragraphs as if fully set forth here.

**ANSWER:**

Defendant restates and incorporates by reference its answers to paragraphs 1 through 38, inclusive, as if fully set forth herein.

40. There exists in Illinois a clear and well-established public policy against racist policies and practices in employment.

**ANSWER:**

The allegations contained in Paragraph 40 assert a legal conclusion to which no response is required.

41. At the time Vavra was threatened by Honeywell because of his reluctance to participate in racially-offensive and illegal training, he had a good-faith and well-established belief that such training, behavior and language was both legally and morally wrong.

**ANSWER:**

Defendant denies that the Unconscious Bias Awareness training at issue was racially-offensive and illegal. Defendant denies the remaining allegations in Paragraph 41.

18

42.     Because Vavra voiced his opposition to Honeywell's racially-based training, language, and culture, and ultimately refused to participate in said training, language and culture, he was discriminated against and ultimately terminated from his employment.

**ANSWER:**

Honeywell denies that it has or had "racially-based training, language and culture" and denies the remaining allegations in Paragraph 42.

43.     Honeywell's actions in disciplining and subsequently terminating Vavra constitutes retaliation in violation of Illinois Public Policy.

**ANSWER:**

Denied.

44.     As a result of Honeywell's illegal retaliation against Vavra, Vavra has suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees.

**ANSWER:**

Defendant denies it engaged in any illegal retaliation, illegal conduct or any unlawful employment practices.  Defendant denies the remaining allegations contained in Paragraph 44.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Charles Vavra prays for judgment in his favor and against Defendant Honeywell, and for an Order of the Court as follows:

1.     Adjudging that Defendant is liable to Plaintiff for his actual damages in an amount to be proven at trial, including front pay, back pay, treble damages and statutory penalty, interest,

emotional distress and pain and suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

2.    Awarding Plaintiff his costs, reasonable attorney fees and any other relief permitted by statute, after appropriate motion for the same; and

3.    Awarding such other relief as the Court may deem just and equitable.

**ANSWER:**

Defendant admits only that Plaintiff seeks the relief requested above, but denies that it engaged in or is liable for any wrongful conduct, and denies that Plaintiff's requested relief, or any other relief to Plaintiff, is warranted or appropriate. Defendant respectfully requests judgment in its favor along with its costs, expenses, and any such further relief as may be appropriate.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

1.    Plaintiff's claims are barred, in whole or in part, to the extent they exceed the scope of or are inconsistent with the Charge of Discrimination Plaintiff filed against Defendant with the EEOC.

2.    Plaintiff's claims are barred, in whole or in part, to the extent they allege discriminatory conduct occurring more than 300 days from the date Plaintiff filed its Charge of Discrimination against Defendant with the EEOC.

3.    Plaintiff's IHRA claims are barred to the extent that Plaintiff failed to exhaust his administrative remedies and obtain a dismissal of his IHRA claims from the Illinois Department of Human Rights.

4.    Plaintiff's claims are barred in whole or part by the applicable statutes of limitation.

20

5.     Defendant exercised reasonable care to prevent and correct promptly any discriminatory and/or retaliatory behavior, and Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by Defendant or to avoid harm otherwise.

6.     To the extent Plaintiff complained adequately of allegedly unlawful harassing, discriminatory, or retaliatory actions, Defendant undertook a prompt investigation and made an appropriate remedial response.

7.     Defendant's employment decisions regarding or affecting Plaintiff were based on legitimate, non-discriminatory, non-retaliatory reasons that were in no way related to Plaintiff's protected class, alleged protected activity, or any other unlawful basis.

8.     Even if the trier of fact were to determine that a discriminatory and/or retaliatory motive or reason played any part in the employment decision or actions regarding the Plaintiff, which Defendant denies, such decisions or actions would have been taken in any event absent a discriminatory and/or retaliatory motive or reason, for legitimate, non-discriminatory and/or non-retaliatory reasons.

9.     In connection with any claim, Plaintiff is not entitled to recover damages or relief duplicative of damages or relief sought in connection with any other claim.

10.     Plaintiff's claim for alleged future lost wages ("front pay") is barred or limited because it is too speculative and not well grounded.

11.     Plaintiff's claims for damages are barred or limited because Plaintiff has either mitigated her damages or has failed to mitigate her damages.

12.     Plaintiff's claims are barred, in whole or in part, by any additional after-acquired evidence that may arise during these proceedings.

13.     Plaintiff is not entitled to any punitive damages because Defendant did not willfully violate any statute or act recklessly, wantonly or willfully.

14.     Defendant denies every allegation, whether expressed or implied, that is not unequivocally and specifically admitted in its Answer and Defenses to Plaintiff's Complaint. Defendant reserves the right to supplement and amend its Additional and Affirmative Defenses as warranted by the facts of the case. Defendant affirmatively states that it will rely upon each and every affirmative defense or other avoidance provided by the Federal Rules of Civil Procedure that may become known during the course of litigation, including discovery, trial, or otherwise.

**WHEREFORE**, Defendant HONEYWELL INTERNATIONAL INC.  respectfully requests that this Court enter an Order:

(1)     Giving Plaintiff nothing by way of his claims herein;

(2)     Entering judgment in favor of Defendant on all claims;

(3)     Dismissing the First Amended Complaint with prejudice;

(4)     Awarding Defendant the attorneys' fees it has incurred in defending this action as may be just, proper and in accordance with the law;

(5)     Awarding Defendant the costs of suit it has incurred in this action as may be just, proper and in accordance with the law; and

(6)     Entering such other and further relief as the Court may deem just and proper.

DATED:    February 8, 2022

Respectfully submitted,

By:    /s/ Jennifer Colvin
One of the Attorneys for Defendant
**HONEYWELL INTERNATIONAL
INC.**

Jennifer Colvin (ARDC No. 6274731)
**OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.**
155 N. Wacker Drive, Suite 4300
Chicago, IL 60606
Telephone:  312.558.1220
Facsimile:   312.807.3619
*jennifer.colvin@ogletreedeakins.com*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on February 8, 2022, the foregoing ***Defendant's Answer and Defenses to Plaintiff's First Amended Complaint*** was filed electronically with the Clerk of Court using the ECF system, which sent notification of such filing to:

> John W. Mauck
> Whitman H. Brisky
> Andrew S. White
> **MAUCK & BAKER, LLC**
> One North LaSalle Street, Suite 600
> Chicago, Illinois 60602
> jmauck@mauckbaker.com
> wbrisky@mauckbaker.com
> awillis@mauckbaker.com
>
> Alec J. Beck
> **PARKER DANIELS KIBORT**
> 888 Colwell Building
> 123 North Third Street
> Minneapolis, MN 55401
> beck@parkerdk.com
>
> Douglas P. Seaton
> James V. F. Dickey
> **UPPER MIDWEST LAW CENTER**
> 8421 Wayzata Boulevard, Suite 300
> Golden Valley, MN 55426
> doug.seaton@umlc.org
> james.dickety@umlc.org
>
> ***Attorneys for Plaintiff***

/s/  Jennifer Colvin